UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACI WORLDWIDE CORP.,          ) | |
|                             ) | |
|     Plaintiff,             ) | |
|                             ) | |
|        v.             ) | |
|                             ) | Civil Action No. 17-cv-10662-IT |
| KEYBANK NATIONAL         ) | |
| ASSOCIATION, and KEYCORP,    ) | |
|     Individually and as successor in   ) | |
|     interest to FIRST NIAGARA     ) | |
|     FINANCIAL GROUP, INC.,     ) | |
|                             ) | |
|     Defendants.           ) | |

REPORT AND RECOMMENDATION ON MOTION TO DISMISS
[Docket No. 39]

June 15, 2018

Boal, M.J.

ACI Worldwide Corporation ("ACI") brings this action against defendants KeyBank National Association ("KeyBank") and KeyCorp (collectively referred to as "Key") for breach of contract, fraudulent inducement, civil conspiracy and conversion.  Key has moved to dismiss five of the eight counts in the second amended complaint ("SAC").  Docket No. 39.[1]  For the reasons set forth below, the Court recommends[2] that the District Judge assigned to this case grant in part and deny in part that motion.

---

[1] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.
[2] On January 25, 2018, the District Judge assigned this case to the undersigned for full pretrial management and dispositive motions.  Docket No. 54.

## I.    PROCEDURAL HISTORY

On April 19, 2017, ACI filed a complaint, which it subsequently amended two times. Docket Nos. 1, 5, 36.  The operative complaint contains eight causes of action: breach of the "Internet Banking System Licensing and Web Technologies Agreement (Data Center)" ("OLB Agreement") (Count I); fraudulent inducement in connection with the OLB Agreement (Count II); civil conspiracy in connection with the OLB Agreement (Count III); breach of the "ACI Application Services Master Agreement No. D-212" ("EB Agreement") (Count IV); breach of Addendum 54 to Schedule 1 of the EB Agreement (Count V); breach of the confidentiality provisions of the OLB and EB Agreements (Count VI); breach of the OLB and EB Agreements by continued use (Count VII); and conversion of proprietary software (Count VIII).  Docket No. 36.

On October 30, 2017, the defendants moved to dismiss counts II, III, VI, VII and VIII of the SAC, Docket No. 39, which ACI opposed.  Docket No. 44.  The defendants filed a reply brief on November 28, 2017.  Docket No. 50.  After several adjournments at the parties' request, the Court heard oral argument on April 24, 2018.

## II.    SCOPE OF THE RECORD

In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings and documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (citing Fed. R. Civ. P. 10(c)).  If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).

In addition, "under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  "These exceptions include documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint."  Id. (internal quotations, modifications, and citations omitted).  Accordingly, if "a complaint's factual allegations are expressly linked to— and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."  Trans-Spec Truck Serv, 524 F.3d at 321 (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998)).

Here, Key refers to its answer to ACI's first amended complaint, as well as a shareholder class action complaint challenging the FNFG-KeyCorp merger.  Docket No. 40 at 2 n.2, 6.  The parties also jointly submitted the following documents, the authenticity of which is not challenged: the OLB Agreement; the 2009 Amendment to the OLB Agreement; the 2016 Amendment to the OLB Agreement; the EB Agreement; and the 2014 Amendment to the EB Agreement.  Docket No. 76.  The defendants also submitted a March 20, 2016 transmittal email attaching the executed copy of the 2016 Amendment to the OLB Agreement.  Id.

This Court will consider only the agreements and amendments submitted as part of Docket No. 76.  Those documents are central to ACI's claims and are sufficiently referred to in the SAC.  The remaining documents do not meet any of the exceptions listed above.  Accordingly, the Court declines to consider any of them for the purposes of this report and recommendation.

3

III.     FACTS[3]

On December 21, 2001, KeyCorp's predecessor-in-interest First Niagara Financial Group, Inc. ("FNFG") entered into the OLB Agreement with ACI's predecessor-in-interest, S1, Inc.  SAC ¶ 11.  The OLB Agreement has a Texas choice-of-law provision.  OLB Agreement § 17, Docket No. 76-1 at 6.  The amendments to the OLB Agreement have no separate choice-of-law provisions and refer back to the original agreement.  See Docket No. 76-2, 76-3.

On March 31, 2009, ACI's predecessor-in-interest, ACI Worldwide (MA), Inc., entered into the EB Agreement with First Niagara Bank, a subsidiary of FNFG.  Id. ¶ 12.  The EB Agreement has a Delaware choice-of-law provision.  EB Agreement § 14.21, Docket No. 76-4 at 10.  The amendment to the EB Agreement has no separate choice-of-law provision and refers back to the original agreement.  See Docket No. 76-5.  The OLB and EB Agreements enabled FNFG to provide online banking services to its customers.  Id. ¶ 13.

In June 2015, ACI began the process of renewing the OLB Agreement, which was set to expire on March 20, 2016.  Id. ¶ 14.  That process usually took between nine months to one year, and so ACI typically offered five-year renewal terms.  Id.  Consistent with this practice, in October 2015, ACI offered FNFG a discounted five-year renewal term for the OLB and EB Agreements, but FNFG declined.  Id. ¶ 15.

A.  KeyCorp Plans To Merge With FNFG

On October 30, 2015, KeyCorp announced that it intended to acquire FNFG.  Id. ¶ 16.  Around that time, KeyCorp began to publicly voice its expectation that the merger would yield

---

[3] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the SAC and drawing all reasonable inferences in ACI's favor.  See Morales-Tañon v. P.R. Electric Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

significant annual cost savings.  Id. ¶¶ 16-17.  It specifically identified a shift away from

technology and third party vendor contracts as a source of major savings.  Id. ¶¶ 17-18.

At the time, KeyBank had a legacy online banking system that it used with all of its retail

and commercial customers.  Id. ¶ 20.  For this reason, ACI alleges that KeyCorp knew early on

in the due diligence process that FNFG's contracts with ACI would be one of the places where

KeyCorp intended to reduce vendor costs.  Id.

B.  The Defendants Allegedly Access
ACI's Confidential Information

In its November 30, 2015 S-4 Registration Statement, KeyCorp reported that it was given

access to an electronic data room containing FNFG's non-public contract and vendor

information.  Id. ¶ 19.  As a result, KeyCorp was also privy to the proprietary software licensed

under the OLB and EB Agreements.  Id. ¶ 20.  ACI's proprietary systems and contract terms are

non-public and protected by confidentiality provisions in both the OLB and EB Agreements.  Id.

¶ 20.[4]

---

[4] The OLB Agreement's confidentiality provision states, in pertinent part:

> [ACI] and Client further agree that except as expressly authorized in writing in
> advance by the other party, neither of them will, either during the existence of the
> Agreement or at any time thereafter, (i) copy or disclose Confidential Information
> to any third party except to its employees or consultants with a bona fide need to
> know the same in order to use the Confidential Information for the purposes of
> this Agreement . . .

SAC ¶ 21; OLB Agreement ¶ 12, Docket No. 76-1 at 4-5.  The EB Agreement states, in pertinent
part:

> 9.2 Obligations.  Each Party receiving Confidential Information (the "Receiving
> Party") shall use the Confidential Information disclosed by the other Party (the
> "Disclosing Party") solely for the purposes of performing its obligations under
> this Master Agreement and Schedules and shall disclose such Confidential
> Information only as specifically authorized in Section 9.3 below.

ACI alleges that "FNFG's disclosure of the Agreements and access to ACI's technology" violated these confidentiality provisions, and the defendants' receipt and use of the "improperly obtained information" constituted misappropriation of trade secrets.  Id. ¶ 23.  ACI also alleges that FNFG understood and disregarded its legal obligations, and the defendants accessed ACI's confidential information to perform the synergy evaluations necessary to make aggressive cost-savings projections to shareholders.  Id. ¶ 23.  ACI alleges further that, on January 7, 2016, KeyCorp asked for permission to access ACI's confidential and proprietary information, after KeyCorp had already completed its analyses.  Id.

Similarly, on April 28, 2016, Northwest Bank ("Northwest") executed a purchase and sale agreement to acquire eighteen FNFG branches.  Id. ¶ 24.  FNFG provided Northwest with the same proprietary and confidential information it had provided to KeyCorp, which purportedly enabled Northwest to determine whether to proceed with that acquisition.  Id. ¶¶ 24-25.  FNFG did not request ACI's permission to disclose this information to Northwest.  Id. ¶ 25.  Northwest decommissioned ACI's services at each of the eighteen branches it ultimately acquired.  Id. ¶ 24.

---

9.3 Restrictions.  Notwithstanding Section 9.2, Receiving Party shall not disclose Confidential Information of Disclosing Party, except to its employees, consultants or any third party having a legitimate business purpose with respect to this Master Agreement or a Schedule and having a need to know such Confidential Information.

9.4 Breach of Confidentiality. . . . Each Party acknowledges that the other Party's Confidential Information contains valuable trade secrets and proprietary information of such Party, that any actual or threatened breach of this Section 9.0 shall constitute immediate, irreparable harm to such Party for which monetary damages would be an inadequate remedy, and that injunctive relief is an appropriate remedy for such breach.

SAC ¶ 22; EB Agreement ¶¶ 9.2-9.4, Docket No. 76-4 at 6.

C.  The Defendants Unsuccessfully Seek A
    Short Term Extension, Merge And Ultimately
    Execute The Five-Year OLB Amendment

ACI alleges that the defendants knew they would need ACI's cooperation in transitioning

FNFG customers to KeyBank's legacy platforms.  Id. ¶ 26.  However, ACI's insistence on the

five-year renewal term proved problematic.  Id. ¶ 27.  FNFG implied that the five-year renewal

term could prevent the KeyCorp merger from going forward.  Id.  FNFG therefore attempted to

persuade ACI to allow it to enter into a shorter term extension of the OLB Agreement.  Id.  For a

number of reasons, including ACI's interest in generating predictable recurring revenue, ACI

was unwilling to deviate from its established practice of five-year renewal terms.  Id. ¶ 28.

FNFG and KeyCorp signed the merger agreement on October 30, 2015.  Id. ¶ 29.

Pursuant to that agreement, KeyCorp assumed all property, rights, privileges, powers, franchises,

debts, liabilities and duties of FNFG and First Niagara Bank, which was subsequently merged

into KeyBank.  Id. ¶ 4.  The agreement also prohibited FNFG from entering into any contract

with a liability in excess of $10 million without KeyCorp's approval.  Id. ¶ 29.  The OLB

Agreement has a $17,750,000 minimum commitment.  Id. ¶¶ 31, 45.  Accordingly, FNFG

needed KeyCorp's permission to enter into a five-year extension of the OLB Agreement ("the

OLB Amendment").  Id. ¶¶ 29-30.

In March 2016, KeyCorp approved FNFG's execution of the OLB Amendment.  Id. ¶ 30.

By that time, KeyCorp and FNFG were in the final stages of concluding the merger.  Id.

On or about March 20, 2016, FNFG's Frank Polino informed ACI that KeyCorp had

reluctantly approved FNFG's entry into the OLB Amendment.  Id. ¶ 32.  ACI alleges that, by

entering into that agreement, FNFG also was promising implicitly to abide by the terms of the

renewal.  Id.  Relying on that promise, ACI began to take the steps necessary to continue to

provide maintenance and service to FNFG and KeyCorp, including the allocation of resources.
Id.  The OLB Amendment was fully executed on March 21, 2016.  Id.

ACI claims that neither FNFG nor KeyCorp intended to honor the OLB Amendment.  Id.
¶ 33.  ACI alleges that FNFG and KeyCorp only signed the amendment to induce ACI to
continue to provide services that would facilitate their merger.  Id.  By signing the OLB
Amendment, moreover, ACI maintains that KeyCorp ensured it would have continued access to
ACI's resources, intellectual property and confidential and proprietary business information.  Id.

D.  The Defendants Allegedly Breach
The OLB And EB Agreements

Within two months of the merger, KeyBank directed ACI to decommission FNFG's
online banking system, which ACI claims was effectively a breach of the EB and OLB
Agreements.  Id. ¶ 34.  KeyBank's daily operation of ACI's systems was intended to effectively
cease on October 10, 2016.  Id.  KeyBank requested that those systems remain online until
December 31, 2016 so that it could access static historical data.  Id.

Well in advance of notifying ACI of their intentions, the defendants allegedly invented
justifications for KeyBank's breach of the OLB Amendment.  Id. ¶ 35.  ACI contends that none
of these justifications have merit, and signify an "abrupt" change in tone.  Id. ¶ 38.  According to
ACI, FNFG made its complaints at the time Key signed the amendment, but later dropped them
to ensure ACI's assistance in effectuating the merger.  Id. ¶ 35.  By letter dated August 23, 2016,
for example, KeyBank's chief information officer lauded ACI, stating how much KeyBank
valued the "important role" ACI played "in making the merger a success."  Id. ¶ 36.  Less than
two months later, however, ACI alleges that KeyBank renewed its accusations of coercion.  Id. ¶
37.  In particular, in a November 4, 2016 response to an invoice, KeyBank insisted that ACI had
not negotiated in good faith and FNFG had been coerced into entering the OLB Amendment,

rendering that agreement unenforceable.  Id. ¶ 37.  ACI alleges that Key is a sophisticated entity that knowingly alleged coercion so as to justify its own fraud.  Id. ¶ 38.

The defendants allegedly deceived ACI into believing they would honor their contractual commitments just long enough to ensure ACI's completion of the work they needed.  Id. ¶ 39. Once that work was complete, ACI contends that Key breached the agreements and manufactured its allegations of misconduct, confirming that it never intended to abide by the agreements in the first instance.  Id.

ACI relied on Key's five-year contract commitments.  Id. ¶ 43.  In order to perform services under the OLB Amendment, for example, ACI was required to allocate resources and personnel.  Id.  It also factored the five-year commitments into its fiscal planning and budgeting. Id.  In addition, recurring revenue is a critical financial metric in ACI's public financial reporting, and by the time of KeyBank's breach, ACI had reported predictable revenue from the agreement to its shareholders.  Id.

Furthermore, ACI expended money and human capital negotiating the renewal, and paid commissions to the sales team that ultimately secured it.  Id.  ACI alleges that it would have incurred none of these costs had it known that KeyCorp and FNFG would breach the agreements. Id.

E.  The Defendants Continue To Use
    ACI's Technology Post-Breach

Both the OLB and EB Agreements prohibit the unauthorized use of ACI's technology after termination of those contracts.  Id. ¶¶ 41-42.[5]  Nevertheless, KeyBank continued to use

---

[5] Specifically, the OLB Agreement provides as follows:

On Agreement termination, Client shall discontinue use of The System and return
all licensed products and any and all other licensed products and any and all other

ACI's systems well beyond the date of decommission and without payment or license to do so.

Id. ¶ 40.  ACI discovered this unauthorized use on or around February 23, 2017.  Id.

IV.     DISCUSSION

A.  Standard Of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

In assessing the sufficiency of the complaint, "an inquiring court must first separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Guadalupe-Baez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016) (citing Morales-Cruz v. Univ. of

---

confidential information in its possession to [ACI], or, at [ACI's] option, destroy such materials, including all copies or partial copies thereof.

Id. ¶ 41; OLB Agreement ¶ 9, Docket No. 76-1 at 3-4.  The EB Agreement similarly states:

Upon termination of this Master Agreement, (i) Customer shall immediately cease using the Services under this Master Agreement and any and all Schedules . . . (iii) each Party shall irretrievably destroy all copies of Documentation and the Confidential Information of the other Party on tangible media in such Party's possession or control or return such copies to the other Party, (iv) each Party shall certify in writing to the other Party that it has returned or destroyed such Confidential Information, with no copies retained . . .

Id. ¶ 42; EB Agreement ¶ 13.3, Docket No. 76-4 at 8.

P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  The Court must then determine "whether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (citations omitted).

B.  Choice Of Law

The parties dispute whether three different states' laws apply to certain claims.  Those states are (1) Delaware, which is the state cited by the EB Agreement's choice-of-law provision; (2) New York, the state of FNFG's principal place of business; and (3) Texas, which is the state cited by the OLB Agreement's choice-of-law provision.

A federal court sitting in diversity applies the choice-of-law framework of the forum state.  Hansen v. R.I.'s Only 24 Hour Truck & Auto Plaza, Inc., No. 12-10477-NMG, 2013 WL 2491054, *3 (D. Mass.  June 7, 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  In Massachusetts, a contract's choice-of-law provision is generally honored, provided that it does not conflict with public policy.  NPS, LLC v. Ambac Assurance Corp., 706 F. Supp. 2d 162, 168 (D. Mass. 2010) (citing Feeney v. Dell Inc., 454 Mass. 192 (2009)).

The EB Agreement's choice-of-law provision requires the application of Delaware law. Both parties agree that Delaware law applies to claims based on the EB Agreement.  Docket Nos. 40 at 11 n.5, 44 at 5.  Because no party has suggested that the EB Agreement's choice of Delaware law contravenes public policy, the Court will apply that law with respect to claims based on the EB Agreement.

The OLB Agreement contains the following choice-of-law provision: "[t]he enforceability of th[e OLB] Agreement is subject to and governed by the laws of the State of Texas."  OLB Agreement § 17.  The parties dispute the scope of this provision, Docket Nos. 40 at 4; 44 at 5-7; 50 at 4-5, but agree, for purposes of the motion to dismiss, that there is no

11

substantive difference with respect to the various potential state laws' application to most of the claims at issue.[6]  Those claims are: the majority of the fraudulent inducement arguments (Count II); civil conspiracy (Count III); breach of the confidentiality provisions (Count VI); continued and unauthorized use (Count VII); and one of the defendants' conversion arguments (Count VIII).  Accordingly, the Court need not engage in a formal choice-of-law analysis as to these claims and arguments.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).  The only claims for which the parties argue that a choice-of-law analysis is necessary are the third prong of the fraudulent inducement claim (Count II) and conversion (Count VIII).

      C.  Count II: Fraudulent Inducement

          1.  Choice Of Law

As a basis for dismissal, the defendants argue that ACI did not plead damages for fraud distinct from those for breach of contract, as they must under New York or Delaware law. Docket No. 40 at 9-10.  Texas law, on the other hand, does not require that a plaintiff plead separate damages when bringing a fraud claim together with a breach of contract claim.  See Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp., 646 F.3d 321, 325 (5th Cir. 2011).  The resolution of this choice-of-law issue is material to any evaluation of ACI's fraudulent inducement claim at this stage.  Accordingly, the motion to dismiss may be denied on this basis alone with respect to the fraudulent inducement claim.

The OLB choice-of-law provision states that "the enforceability" of the OLB Agreement is governed by Texas law.  OLB Agreement § 17.  Massachusetts courts generally uphold a contractual choice-of-law selection as long as the result would not be contrary to public policy. NPS, 706 F. Supp. 2d at 168.  However, certain kinds of claims may fall outside the scope of a

---

[6] The parties so stated at oral argument.

contractual choice-of-law provision.  See, e.g., Ne. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 611 (1st Cir. 1993).  Indeed, some courts have held that a choice-of-law provision may not apply to a claim that questions the validity of a contract's formation, such as fraudulent inducement.  Id.; VCA Cenvet, Inc. v. Winchester Veterinary Grp., Inc., No. 11-12123-DPW, 2015 WL 13679196, at *7 n.6 (D. Mass. Aug. 31, 2015).  If the fraudulent inducement claim fell outside of the choice-of-law provision here, then the Court would have to a apply Massachusetts choice-of-law analysis particular to that claim.

Courts in this district have reached different conclusions on whether a fraudulent inducement claim falls outside the enforceability of a contract.  See, e.g., NPS, 706 F. Supp. 2d at 168; Comput. Sales Intern., Inc. v. Lycos, Inc., No. 05-10017-RWZ, 2006 WL 1896192, at *1-2 (D. Mass. July 11, 2006); Neuro-Rehab Assocs., Inc. v. Amresco Commercial Fin., L.L.C., No. CIVA 05-12338-GAO, 2006 WL 1704258, at *9 (D. Mass. June 19, 2005).

Fully resolving this issue would require a choice-of-law analysis during which the Court would have to draw all reasonable inferences in ACI's favor, the Court declines to do so here, where discovery has not yet occurred.  See Primarque Prods. Co. v. Williams West & Witt's Prods. Co., No. 15-30067-TSH, 2015 WL 10097150, at *6 n.6 (D. Mass. Nov. 18, 2015); see, e.g., In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 8 n.2 (1st Cir. 2012) (noting district court's denial of motion to dismiss that was premised upon choice-of-law issue because that issue was premature until discovery occurred); RBS Citizens, N.A. v. Avaya, Inc., No. 14 Civ. 02–M, 2014 WL 2158933, at *5 (D.R.I. May 23, 2014) ("While some courts have undertaken a choice of law analysis at the motion to dismiss stage, this Court finds that it would be inappropriate to do so in this case because the requisite material to conduct the evidence-intensive analysis is not yet available."); Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co.,

87 Mass. App. Ct. 296, 302-03 (2015) (where "the allegations of the complaint, standing alone, are inadequate to determine as a matter of law whether New York or Massachusetts law should be applied," court reversed dismissal that was "based on the premise that [plaintiff] failed to allege an element of that claim that is essential under New York law but not under Massachusetts law."). Accordingly, this Court recommends that the motion to dismiss the fraudulent inducement claim be denied on this basis.

> 2. Fraudulent Intent

Assuming, arguendo, that the District Judge declines to deny the motion to dismiss the fraudulent inducement claim on the basis of the choice-of-law issue, it should deny the motion to dismiss with respect to that claim for the following reasons. The defendants argue that the fraudulent inducement claims fails because ACI has not plausibly alleged fraudulent intent. Docket No. 40 at 5-6. Specifically, the defendants argue that, at the time the parties entered into the OLB Amendment, the merger was pending, and ACI has not alleged that Key lacked the intent to perform even if the merger failed. Id.

The complaint alleges that KeyCorp planned to transition FNFG customers to KeyBank's online banking system once the merger was complete, eliminating their need for ACI's services. SAC ¶ 20. The defendants allegedly knew that they needed ACI's continued cooperation and assistance in this transition. Id. ¶ 26. ACI insisted on a five-year renewal term for the OLB Agreement, which FNFG suggested was detrimental to the merger. Id. ¶ 27. As a result, Key unsuccessfully attempted to negotiate a shorter term extension. Id. ¶¶ 27-28. Ultimately, FNFG's Frank Polino informed ACI that FNFG and KeyCorp would reluctantly agree to the full five-year extension. Id. ¶ 32.

ACI alleges that FNFG (through Polino) and KeyCorp knew that they would not honor the terms of the OLB Amendment and yet made representations to the contrary.  Id. ¶ 33.  ACI alleges further that such representations were false, willful and intended to induce ACI to enter into the OLB Amendment and to provide the services and resources necessary to assist in the transition.  Id. ¶¶ 33, 57.

Drawing all reasonable inferences in ACI's favor, as this Court must at this stage, these allegations plausibly state that the defendants had the requisite fraudulent intent.  While the defendants' theory of the case may prevail in the long run, at this stage, ACI has adequately alleged that, at the time the parties executed the OLB Amendment, FNFG and KeyCorp were operating as if the merger would go through.  Indeed, the complaint alleges that the defendants made representations to induce ACI to provide the services and resources necessary to facilitate their merger.  SAC ¶ 33.  The fraudulent inducement claim is therefore not subject to dismissal on this basis.

3.   Reasonable Reliance

The defendants also argue that ACI has not plausibly alleged reasonable reliance.  Docket Nos. 40 at 6-9.  In particular, the defendants argue that ACI knew they were entering into the OLB Amendment under protest, rendering it unlikely that Key would perform for the full five years, and any reliance on that "promise to perform" unreasonable.  Id.  The defendants also contend that, in any event, ACI did not rely on Key's alleged promise.  Docket No. 40 at 8.

"A central inquiry in the fraudulent inducement analysis is whether the reliance of the allegedly defrauded party on the representations of the other was reasonable."  Crotona 1967 Corp. v. Vidu Bros. Corp., 925 F. Supp. 2d 298, 308 (E.D.N.Y. 2013) (citation omitted); accord Lam v. Alpha Realtors, Inc., No. H-09-3041, 2010 WL 4569995, at *8 (S.D. Tex. Nov. 4, 2010).

In assessing the reasonableness of a party's alleged reliance, courts consider the context of the entire transaction, including its complexity and magnitude, the sophistication of the parties and the content of any agreements between them.  See Crotona 1967 Corp., 925 F. Supp. 2d at 308-09; Lam, 2010 WL 4569995, at *12-13.

Here, ACI alleges that, despite the defendants' previous unwillingness to entertain a five-year extension of the OLB Agreement, they ultimately agreed to that extension, albeit with reluctance.  SAC ¶¶ 27, 32.  ACI claims that it relied on this representation by beginning to undertake the steps necessary to continue to provide maintenance and service to the defendants, including allocating resources.  Id. ¶ 32.  It was not unreasonable for ACI to assume that FNFG and KeyCorp, as sophisticated corporations, had assessed the situation (i.e., ACI's unwillingness to agree to a shorter-term extension of the OLB Agreement, their desire to migrate FNFG customers to KeyBank's platform post-merger and their continued need for online banking services) and weighed their options (including, possibly, their ability to retain a third party vendor for a shorter-term engagement or the potential to make the transition to KeyBank's platforms after five years).  Drawing all inferences in ACI's favor, its reliance was not unreasonable given that the defendants did enter into the OLB Amendment.

ACI has also adequately alleged that it relied on the defendants' representations.  In particular, among other things, ACI claims that it allocated resources, including the dedication of personnel, to help perform the services required under the OLB Amendment.  SAC ¶ 43.  It paid commissions to the sales team that secured the renewal and expended nine months of time and money negotiating that renewal.  Id.  ACI alleges that it would not have taken these and other measures if it had known the defendants did not intend to comply with their obligations under the

OLB Amendment.  Id. ¶ 43.  Construing these allegations in the light most favorable to ACI, such allegations are sufficient to withstand the motion to dismiss on this basis.

    4.  Proper Defendants

The defendants further argue that any fraudulent inducement claim against KeyBank and KeyCorp must fail because ACI has not alleged that those specific entities made fraudulent representations.  Docket No. 40 at 10.  However, ACI has alleged that, pursuant to the merger agreement, KeyCorp assumed all property, rights, privileges, powers, franchises, debts, liabilities and duties of FNFG and First Niagara Bank.  See SAC ¶ 4.  ACI has further asserted that KeyCorp and KeyBank, as successors-in-interest, assumed all rights and liabilities of FNFG and First Niagara Bank.  Id.  Drawing all reasonable inferences in ACI's favor, the Court finds that ACI's claim against these defendants survives.  Accordingly, this Court recommends that the District Judge deny the motion to dismiss Count II.[7]

    D.  Counts VI And VII: Contract Claims

Counts VI and VII allege that the defendants breached the confidentiality and termination provisions of the OLB and EB Agreements by sharing information with third parties and also by continuing to use ACI's information after the defendants breached the agreements.  SAC ¶¶ 79-91.  To prove these claims, ACI must demonstrate (1) the existence of an agreement; (2) FNFG and/or Key's breach of that agreement; and (3) resulting damages.  Lawyers Title Ins. Corp. v.

---

[7] Under Delaware, Texas and New York law, civil conspiracy is derivative of an underlying tort claim because liability for that claim depends on participation in an underlying tort.  Hydrogen Master Rights, Ltd. v. Weston, 228 F. Supp. 3d 320, 341 (D. Del. 2017); Lexxus Intern., Inc. v. Loghry, 512 F. Supp. 2d 647, 670 (N.D. Tex. 2007); Mori v. Saito, 10-cv-6465 (BSJ) (GWG), 2012 WL 13042573, at *13 (S.D.N.Y. Feb. 16, 2012).  The parties agree that the civil conspiracy claim rises and falls on whether the underlying tort claim survives a motion to dismiss.  See Docket Nos. 40 at 10; 44 at 4 n.1, 15.  Therefore, this Court also recommends that the District Judge deny the motion to dismiss Count III.

Doubletree Partners, L.P., 739 F.3d 848, 858 (5th Cir. 2014); Weyerhaeuser Co. v. Domtar Corp., 61 F. Supp. 3d 445, 449 (D. Del. 2014); Leepson v. Allan Riley Co., No. 04 Civ. 3720 (LTS) (AJ), 2006 WL 2135806, at *3 (S.D.N.Y. July 31, 2006).

        1.    Count VI: Breach Of Confidentiality Provision

        a.    OLB And EB Agreements: Damages

The defendants first argue that Count VI should be dismissed because ACI has not adequately pled damages.  Docket Nos. 40 at 11-12; 50 at 3.

ACI alleges that FNFG breached the OLB and EB Agreements when sharing confidential information with Northwest without ACI's written consent or knowledge.  SAC ¶¶ 81, 83.  As a result of these breaches of contract, ACI alleges that it "suffered damages."  Id. ¶ 85.  Under Delaware law, ACI "need not allege an exact monetary figure in order to sufficiently plead that it suffered damages from the breach of contract."  See Weyerhaeuser Co., 61 F. Supp. 3d at 453. Drawing all reasonable inferences in ACI's favor, therefore, this Court denies Key's motion to dismiss the breach of confidentiality claim with respect to the EB Agreement.

As for the OLB Agreement breach of confidentiality claim, the defendants have presented this Court with no legal authority to suggest that ACI was required to plead additional damages to survive the motion to dismiss.  Accordingly, drawing all reasonable inferences in ACI's favor, as this Court must at this stage, the Court recommends denial of the motion to dismiss that claim as well.

        b.    EB Agreement: Legitimate Business Purpose

The defendants also argue that the EB Agreement allowed its disclosure of confidential information by expressly permitting such disclosure to "any third party having a legitimate business purpose."  Docket Nos. 40 at 12-13; 50 at 3.

Pointing to Section 9.3 labeled "Restrictions," ACI argues that the legitimate business purpose must relate to the Master Agreement.  Docket No. 44 at 17.  They further argue that FNFG's merger did not relate to the purposes of the Master Agreement.  Id.  While it may be that the defendants' argument carries the day at a later stage of the proceedings, at this stage, ACI has plausibly alleged a breach of the confidentiality provisions of the EB Agreement.  For this reason, the Court recommends that the District Judge deny the motion to dismiss Count VI.

2.      Count VII: Breach Of Contract By Continued Use

The defendants maintain that the continued use claim should be dismissed based on the plain language of the contract.  Docket Nos. 40 at 13-14; 50 at 3-4.  In particular, the defendants argue that the OLB and EB Agreements prohibit access to ACI's online banking systems only after those agreements have been terminated, which never happened.  Id.

On a motion to dismiss, a trial court cannot choose between two different reasonable interpretations of an ambiguous document.  Narrowstep, Inc. v. Onstream Media Corp., No. 5114-VCP, 2010 WL 5422405, at *7 (Del. Ch. Dec. 22, 2010); Phoenix Aero Aviation Eng'g, Ltd. v. Trace Engines, L.P., MO-11-CV-007, 2012 WL 13032937, at *5-6 (W.D. Tex. June 22, 2012); Psenicska v. Twentieth Century Fox Film Corp., No. 07 Civ. 10972 (LAP), 2008 WL 4185752, at *4 (S.D.N.Y. Sept. 3, 2008).  Where ambiguity exists, dismissal is proper only if the defendant's interpretation is the only reasonable construction as a matter of law.  Khushaim v. Tullow Inc., C.A. No. N15C-11-212-PRW, 2016 WL 3594752, at *3 (Del. June 27, 2016); see Gray v. Chesapeake Exploration, L.L.C., No. SA-14-CA-1020-XR, 2015 WL 339744, at *4-5 (W.D. Tex. Jan. 26, 2015); Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010).  When parties present differing, but reasonable, interpretations of a contract term, the Court may need to examine extrinsic evidence to discern the parties' agreement.

Chambers v. Time Warner, Inc., 282 F.3d 147, 153-54 (2d Cir. 2002); Khushaim, 2016 WL 3594752, at *3; Roland v. Flagstar Bank, FSB, No. 1:13-cv-588, 2014 WL 94356, at *7 (E.D. Tex. Jan. 9, 2014).  Such an inquiry cannot proceed on a motion to dismiss, id., especially given the Court's duty to construe the facts in the light most favorable to the plaintiff.

The OLB and EB Agreements prohibit the unauthorized use of ACI's systems upon "termination."  SAC ¶¶ 41-42.  The defendants' argument hinges on the Court's interpretation of the word "termination".  Docket Nos. 40 at 13-14; 50 at 3-4.  That term is reasonably susceptible to different interpretations when viewed in the context of the agreements as a whole.

ACI alleges that, early on in the merger process, it became apparent that FNFG would transition its customers to KeyBank's online banking platforms once the merger was complete.  SAC ¶¶ 20, 26.  At Key's direction, less than two months after the merger, ACI decommissioned FNFG's online banking system.  Id. ¶ 34.  ACI has not alleged that it sent Key a termination notice, or otherwise formally terminated the agreements.  However, ACI has alleged that it decommissioned FNFG's systems at Key's request, and ACI intended to restrict FNFG's access to ACI's systems beginning October 10, 2016.  Id.  At that point, the working relationship between the parties had come to an end.  Indeed, ACI wrote to Key and demanded payments as a result of the breach.  Id.  Nevertheless, according to ACI, KeyBank, surreptitiously and without payment, continued to use ACI's systems until at least February 2017.  Id. ¶ 40.

AS ACI has plausibly alleged a breach of contract by continued use, the Court recommends that the District Judge deny defendants' motion to dismiss Count VII.

E.   Conversion

The defendants argue that the economic loss rule bars ACI's conversion claim regardless of which law applies.  Docket Nos. 40 at 15-16; 50 at 4.[8]  ACI provides no opposition to this argument.  Rather, it maintains only that its conversion claim cannot be addressed by dispositive motion without a full choice-of-law analysis.  Docket No. 44 at 18.  The Court disagrees and finds that the conversion claim fails under the laws of all three potential states.

New York, Texas and Delaware law all adhere to the rule that damages arising from a party's failure to perform pursuant to a bargained-for agreement are recoverable in contract, instead of tort, unless a legal duty independent of the contract itself has been violated. Kalimantano GmbH v. Motion in Time, Inc., 939 F. Supp. 2d 392, 415-16 (S.D.N.Y. 2013) (New York's "economic loss" rule); Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A", 192 S.W.3d 120, 126-27 (Tex. App. 2006) (Texas' "independent injury" rule); Khushaim, 2016 WL 3594752, at *7-8 (Delaware's "economic loss" doctrine).

In the instant case, ACI's claim for conversion is not qualitatively different from its breach of contract-continued use claim; indeed, those claims are largely duplicative.  Compare SAC ¶¶ 88-91 with SAC ¶¶ 92-97.  The complaint is devoid of any substantive allegation that the defendants' continued use of ACI's proprietary software violated a duty in tort.  The alleged conversion of ACI's proprietary software is directly linked to Key's breach of the EB and OLB Agreements.  In other words, the defendants' conduct gives rise to liability only because it breaches the parties' agreements.  The conversion claim swaps "proprietary software" for

_____

[8] Key also argues that the conversion claim should be dismissed because (1) under Texas law, ACI fails to allege that it demanded a return of the purportedly converted property and (2) a conversion claim cannot be based on "intangible" property, which is the case here.  Docket Nos. 40 at 14-15; 50 at 4.  The Court need not address these arguments, as it finds that the conversion claim is otherwise subject to dismissal.

"systems" in the breach of contract claims and adds language about the defendants' conduct being knowing, deliberate and willful.  See SAC ¶¶ 89, 94, 96.  However, at bottom, the same conduct forms the basis for both claims.  This Court therefore recommends dismissal of Count VIII.

## V.   RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge grant in part and deny in the part the motion to dismiss.

## VI.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge