UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ACI WORLDWIDE CORP., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 1:17-cv-10662-IT |
| | * | |
| KEYBANK NATIONAL ASSOCIATION | * | |
| and KEYCORP, Individually and as | * | |
| successor in interest to FIRST NIAGARA | * | |
| FINANCIAL GROUP, INC., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

September 30, 2020

TALWANI, D.J.

Plaintiff ACI Worldwide Corp. ("ACI"), an internet banking software and services company, sued its former customer, Defendants KeyBank National Association and KeyCorp (together, "KeyBank"), individually and as successor in interest to First Niagara Financial Group, Inc. ("First Niagara"). ACI alleges that KeyBank breached two contracts – the ACI Application Services Master Agreement (the "EB Agreement") and the Internet Banking System Licensing and Web Technologies Agreement (the "OLB Agreement") – and asserts various contract and tort claims.

Pending before the court are the parties' cross-motions for partial summary judgment. In its Motion for Partial Summary Judgment [#123], KeyBank seeks: 1) judgment on ACI's tort claims (Counts II and III); 2) judgment on the enforceability of the limitation of liability clause in the EB Agreement, as it affects the assessment of damages for KeyBank's breach of the EB Agreement and that agreement's Addendum 54 (Counts IV and V); and 3) judgment on two remaining breach of contract claims (Counts VI and VII). In its Motion for Partial Summary

Judgment [#120], ACI seeks judgment on three of KeyBank's affirmative defenses to its alleged breach of the OLB Agreement (Count 1): 1) breach of the duty of good faith and fair dealing; 2) duress; and 3) unconscionability.

The Magistrate Judge to whom the motions were referred recommended that the court grant KeyBank's motion [#123] and grant ACI's motion [#120] on the unconscionability defense but deny judgment as to the other two defenses. R&R 39-40 [#144] (the "R&R" or the "Report"). ACI has filed objections to each adverse recommendation.

After de novo review of those portions of the report or specified proposed findings or recommendations to which objection is made,[1] for the reasons outlined in the Report and the additional reasons set forth below, the court ACCEPTS and ADOPTS the Magistrate Judge's Report and Recommendation [#144] in its entirety.[2]

## I.  KeyBank's Motion for Partial Summary Judgment [#123]

### A.  ACI's Fraudulent Inducement Claim (Count II)

ACI claims in Count II that KeyBank fraudulently induced ACI into signing the 2016 OLB Agreement despite an intent to breach the contract. On this claim, the Magistrate Judge recommended granting judgment to KeyBank, finding that: 1) New York law applied; 2) ACI has not identified an actionable false statement; 3) even assuming, arguendo, that KeyBank's signing of the 2016 amendment while stating the signing was under duress was a fraudulent misrepresentation, New York's independent fraud rule precludes ACI's claim; 4) ACI cannot

---

[1] A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72(b)(3).

[2] For the relevant procedural background and for the facts, taken from ACI's consolidated statement of facts ("Pl's SOF") [#136] and KeyBank's consolidated statement of facts ("Defs' SOF") [#130], see the Report. R&R 2-8 [#144].

demonstrate reasonable reliance; and 5) ACI has failed to show Defendants' fraudulent intent. R&R 10-17 [#144]. ACI objects to the finding that New York law applies, and argues that even if New York law applies, ACI is not barred by New York's independent fraud rule because it suffered special damages. ACI Obj. to Magistrate [Judge's] R&R ("ACI Obj.") 26-31, 34-37 [#151]. ACI further argues the issue of reasonable reliance should be left to the jury and that there is sufficient evidence to show KeyBank's fraudulent intent. Id. at 31-33.[3]

The court begins with the Magistrate Judge's finding that ACI failed to identify a false statement before turning to ACI's properly filed objections.

1.  ACI has Failed to Identify a False Statement

As a threshold matter, an actionable false statement is a required element of ACI's fraud claim regardless of whether New York or Texas law applies. See Lama Holding Co. v Smith Barney, 88 N.Y.2d 413, 421 (1996) (stating plaintiff must show "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury"); Anderson v. Durant, 550 S.W.3d 605, 614 (Tex. 2018) ("Fraudulent inducement is a species of common-law fraud that shares the same

---

[3] ACI also claimed to "incorporate[] all of its related arguments . . . that are contained in its summary judgment briefing" "in order to preserve the record." See, e.g., ACI Obj. 31 n.36 [#151]. However, incorporating by reference does not place the arguments raised below properly before this court. See United States v. Wihbey, 75 F.3d 761, 766-67 n.1 (1st Cir. 1996) ("ignor[ing defendant's] attempt to incorporate by reference the arguments" made in pre-evidentiary hearing briefing on his motion to suppress and noting that, under Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, a party must "identify specifically the objectionable portions of the proposed findings and recommendations and to state the basis for objection."). Specificity is also required by Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the proposed findings and recommendations."). The Magistrate Judge informed ACI of its obligation in the Report. See R&R 40 [#144]. Accordingly, arguments from ACI's summary judgment briefing on issues not "identif[ied] specifically," in its objections or where ACI has not "state[d] the basis for [its] objection," in its briefing here are waived.

basic elements: (1) material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury.").

The Magistrate Judge found that entering the contract did not amount to an actionable false statement because "First Niagara explicitly signed the 2016 amendment 'under duress' due to ACI's threat to discontinue the OLB platform" and that "[t]he email accompanying the executed 2016 amendment made First Niagara's position quite clear" R&R 14 [#144]. ACI did not timely object to this finding, raising it first in reply to KeyBank's opposition,[4] and accordingly, the objection is waived. See Fed. R. Civ. P. 72(b)(2) ("[W]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").

Nor would ACI's reiteration of the arguments in its briefing before the Magistrate Judge, see ACI's Opp'n to Mot. for Partial Summ. J. 15-16 [#129], have convinced this court to find a false statement. ACI pointed to Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998), where the Texas Supreme Court explained that under Texas law, "a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract." Similarly, in Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986), the Court explained that "[a] promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." But these cases involve a promise not accompanied by other communication. Here, where the signed contract was accompanied by a statement

---

[4] ACI sought leave to file a reply brief to address this and other findings. ACI's Mot. for Leave to File a Reply Br. 1-2 [#155]. The court denied leave to file additional briefing but treated the four-page motion for leave to file as a reply brief. See Elec. Order [#158].

where First Niagara claimed an affirmative defense to the contract, ACI cannot ignore that statement in its attempt to label the communication a fraudulent misrepresentation. Accordingly, ACI can show no actionable false statement, where First Niagara gave notice of its contract defense at the time it signed the agreement.

2.   ACI's Objections

In light of the finding that ACI has failed to identify a material misrepresentation, the court need not reach ACI's properly raised objections on the fraudulent inducement claim. The court nonetheless has reviewed the objections and as set forth herein, finds no disagreement with the Magistrate Judge's recommendation.

a.   The Contractual Choice of Law Provision Does Not Apply to ACI's Fraudulent Inducement Claim

ACI argues that the OLB Agreement's choice of law provision applies to the fraudulent inducement claim. That contractual provision provides that "[t]he enforceability of this Agreement is subject to and governed by the law of the State of Texas, exclusive of the laws of that state governing conflicts of laws." 2001 OLB Agreement § 17 [#122-5]. ACI contends that breach of contract is an essential element of its fraudulent inducement claim and therefore the choice of law provision covers its fraudulent inducement claim. ACI Obj. 27-30 [#151]. In addition, ACI argues the term "enforceability" in the choice of law provision covers pre-formation torts, including fraudulent inducement. Id.

KeyBank does not dispute that its contract formation defenses to ACI's contract claims are subject to Texas law under the choice of law provision and that the clause may reach questions of "enforceability." But the tort at issue here is not a dispute about the "enforceability" of a contract. Rather, ACI claims that KeyBank committed fraud by wrongfully inducing ACI to do something it would not have otherwise done and ACI is therefore entitled to damages.

The First Circuit authority offered by ACI does not suggest reading the contractual clause

otherwise. In <u>Ne. Data Sys., Inc. v. McDonnell Douglas Comp. Sys. Co.</u>, the contractual choice

of law provision stated that "[t]his Agreement and the rights and obligations of the parties hereto

shall be governed by and construed in accordance with the laws of California." 986 F.2d 607,

609 (1st Cir. 1993). The court found that allegations that the defendant violated Massachusetts

General Law chapter 93A by knowingly or willfully breaching the contract did not remove this

claim from the contractual choice of law provision, concluding those "additional 'state of mind'

or 'bad motive' allegations" "add little" and "essentially reduce to a contract claim." <u>Id.</u> at 609-

10. The court concluded that "'rascal-like' breach of contract claims" were covered by the choice

of law clause. <u>Id.</u> at 610. The court noted further that the Massachusetts Supreme Judicial Court

has recognized that, under some circumstances, "a Chapter 93A claim 'is essentially duplicative

of a traditional contract claim.'" <u>Id.</u> (citing <u>Canal Elec. Co. v. Westinghouse Elec. Corp.</u>, 406

Mass. 369, 378 (1990)).

At the same time, the First Circuit differentiated a final Chapter 93A claim, where the

claim "rests upon allegations of fraud, not breach of contract." <u>Id.</u> at 611. In that claim, the

plaintiff alleged the defendant, when negotiating the contract, failed to disclose certain

information. The court concluded that "[b]ecause this claim concerns the validity of the

<u>formation</u> of the contract, it cannot be categorized as one involving the rights or obligations

arising under the contract." <u>Id.</u> (emphasis in the original). Here, as with the final 93A claim in

<u>Ne. Data Sys., Inc.</u>, ACI's standalone tort claim rests upon allegations of fraud.

ACI seeks to distinguish <u>Ne. Data Sys., Inc.</u> by arguing that the fraud alleged here,

KeyBank's inducement of ACI to sign the contract despite KeyBank's intention to breach,

includes as an "essential element" the eventual breach of contract. ACI Obj. 27 n.31 [#151]. But

the breach of contract, though relevant to ACI's injury, is not an "essential element" of the

misrepresentation claim itself.

ACT also asks the court to follow Neuro-Rehab Assocs., Inc. v. AMRESCO Comm. Fin., LLC, 2006 WL 1704258 (D. Mass. June 19, 2006) and Colucci, Colucci, Marcus & Flavin, P.C. v. Citizens Bank of Mass., 2018 WL 1567605 (D. Mass. Mar. 30, 2018). In Neuro-Rehab, the court held that claims of pre-formation misrepresentation "are substantively akin to the claim for recission of the contractual agreements" and, therefore, the clause that covered issues of "validity" and "enforceability" of the contract reached the pre-formation tort claim. 2006 WL 1704258, at *9. Here, in contrast, ACI's tort claim does not seek rescission and does not challenge the validity and enforceability of the contract. Nor is Colucci of persuasive value, where the parties there did not dispute application of the contract's choice of law provision. 2018 WL 1567605, at *2.

Accordingly, for the reasons set forth by the Magistrate Judge and for the additional reasons set forth herein, the court finds that the contractual choice of law provision does not apply to ACI's tort claims.

### b.  Special Damages

ACI concedes that "[u]nder New York law, fraud in the inducement requires proof of special damages independent of the contract damages." ACI Obj. 34 [#151]. However, ACI objects to the Magistrate Judge's finding that ACI did not suffer special damages, see R&R 15 [#144], asserting that it suffered enterprise-value damages and renewal damages.

### i.  Enterprise-Value Damages

The Magistrate Judge found that ACI lacks standing to assert enterprise-value damages, noting that ACI's expert testified that ACI, as a wholly owned subsidiary, "does not have an enterprise value," and rejecting the expert's later-offered affidavit as a "sham affidavit." R&R 18-19 n.95 [#144]. ACI offers no objection to the "sham affidavit" finding but insists that the court should nonetheless allow ACI to seek loss of its own enterprise value, now measured by

the enterprise value of its parent company. ACI Obj. 36 [#151] (stating the damages should be based on the "impact on its parent's share value"). The court agrees with the Magistrate Judge that ACI lacks standing to assert enterprise-value damages in light of the expert's original testimony and rejects ACI's further argument.

ACI also objects to the Magistrate Judge's denial of ACI's request to amend the complaint to add its parent company so it may seek such damages. R&R 19 [#144]; ACI Obj. 37 [#151]. ACI does not dispute that the more stringent "good cause" standard of Fed. R. Civ. P. 16(b) applies here, where the scheduling order set a September 1, 2017, deadline for any motion to amend the pleadings, but argues there is good cause where ACI was diligent in requesting leave once it learned of KeyBank's standing argument and that the amendment will not add any work to the case. ACI Obj. 37 [#151]. KeyBank responds that ACI was not diligent and that adding a new party will require new discovery. KeyBank Reply to Obj. ("KeyBank's Reply") 19-20 [#154].

The court finds no cause to grant leave for an amendment here, where ACI's own expert testified in January 2018 that ACI does not have an enterprise value on its own, <u>Appx. KKKKK-Behrens Dep. 12</u> [#137-5], and ACI did not raise the issue until May 20, 2019, and, even then, did not seek leave to amend but instead suggested an amendment only if it was unable to defeat KeyBank's summary judgment motion on this issue. <u>See</u> ACI's Opp'n to Mot. for Partial Summ. J. 29 [#129]. Moreover, ACI's contention that there would be no additional discovery or delay if a new party is added to the case is frivolous.

The Magistrate Judge recommended, in the alternative, that ACI failed on the merits to show that it can establish enterprise-value damages where "ACI has not connected its supposed diminution in enterprise value to any actual pecuniary loss sustained as the direct result of First Niagara's alleged fraud." R&R 19-20 [#144]. ACI has offered no objection to this finding, and

the court adopts it in full.

ii.   Renewal Damages

The Magistrate Judge also concluded that renewal damages are "highly implausible on the pleaded facts." R&R 15 [#144]. The court agrees. ACI claims that, if not for KeyBank's fraudulent misrepresentation, ACI would not have entered into the 2016 OLB agreement, and instead "would have decommissioned the system at that point in time . . . ." Am. Compl. ¶ 57 [#36]. For ACI to then claim damages because the 2016 contract was not renewed for yet another five years makes no sense.

Based on the statements made by ACI's damages expert, see Appx. KKKKK – Behrens Dep. 119-126, 143-144 [#137-5], ACI's attempt to work around this extraordinary contradiction appears to be based on the following series of hypothetical events: ACI, having understood that KeyBank would claim the contract was invalid, would have refused to enter into any agreement at all, and would thereby have possibly ensured that First Niagara's merger with KeyBank failed, leaving First Niagara no option but to renew the OLB Agreement with ACI, not only in 2016 but also for future five year renewals. While a jury may well agree with ACI that if the merger had indeed failed, First Niagara would have been forced to enter into a five-year agreement with ACI in 2016, no juror could reasonably conclude that in these circumstances, ACI can show that it is more likely than not that, in 2021, at the end of the forced five-year contract, First Niagara would have renewed the contract for another five years. ACI's argument as to renewal damages is therefore not only entirely speculative, but as the Magistrate Judge concluded, highly implausible.

c.   Justifiable Reliance

The Magistrate Judge found that, based on First Niagara's assertion that it was signing the 2016 OLB Agreement "under duress," ACI could not have reasonably relied on Defendants'

intention to honor the agreement. R&R 15-16 [#144]. ACI objects, arguing that this question is not appropriately decided on summary judgment when the evidence is viewed in the best light for ACI, and that a single declaration of duress was not enough of a red flag to make their reliance unreasonable. ACI Obj. 31-32 [#151].[5]

Whether the question of reasonable reliance may be decided on summary judgment depends on the record before the court. Here, the undisputed record shows that First Niagara's signed contract – the purported misrepresentation – was accompanied by the statement that First Niagara was signing "under duress." The Magistrate Judge concluded that this "explicit warning . . . was more than a red flag to render any reliance on the amendment unjustifiable." R&R 16 [#144]. The court agrees.

ACI argues it was not required to make further inquiry where the "the 'red flags' or 'hints of falsity' . . . could not be confirmed by additional inquiry." ACI Obj. 32-33 [#151] (citing Structured Capital Sols., LLC v. Commerzbank AG, 177 F. Supp. 3d 816, 837 (S.D.N.Y. 2016)). But what was involved here was not a "hint of falsity," but "more than a red flag." And ACI offers no details of what additional inquiry was needed for it to understand that KeyBank was explicitly stating, at the exact time of the purported fraudulent promise, that it viewed the agreement as legally invalid. In any event, ACI conducted no further inquiry. See id.

The parties' dispute over the validity of the contract is properly addressed in connection with ACI's breach of contract claim. But given the assertion of duress, whether correct or incorrect, made together with the delivery of the contract, no reasonable jury could find that ACI

---

[5] ACI also contends that under Texas law, there is no requirement that reliance be reasonable. See ACI Obj. 33 n.39 [#151]. While ACI argued to the Magistrate Judge that Texas law applied, ACI did not make this further argument as to this element of fraudulent inducement. The court finds that argument both waived and, in any event, wrong. See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC, 546 S.W.3d 648, 654 (Tex. 2018) (in a fraud claim, a plaintiff must show that is "actually and justifiably relied upon the representation") (emphasis added).

reasonably relied on the signed contract for purposes of the tort of fraudulent inducement.

> ### d.  Evidence of Fraudulent Intent

Last, the Report recommends a finding that there is insufficient evidence of fraudulent intent to reach the jury. R&R 16-17 [#144]. ACI objects, arguing that "KeyBank had a secret plan not to honor the agreement even before the agreement was signed" and that the Report ignores evidence that a KeyBank witness stated there was intent merely to get through the conversion to KeyBank's online banking software and then "take appropriate actions with ACI." ACI Obj. 33-34 [#151] (quoting Appx. KKKK – Kontul Dep. 154 [#130-6]).

This argument ignores the undisputed fact that First Niagara made plain its view of the amendment – First Niagara asserted that it was signing under duress. It does not matter whether First Niagara and KeyBank viewed the charge of duress as a basis for negotiating a new agreement or as an affirmative defense to a breach of contract claim if negotiations failed. First Niagara's claim of duress was no secret. The court therefore agrees with the Magistrate Judge that ACI has shown no evidence of fraudulent intent.

> ### B.  Conspiracy (Count III)

The Magistrate Judge reported that both parties agree that ACI's claim of conspiracy is derivative of its claim for fraud. R&R 17 [#144]. ACI has filed no objection to this conclusion. Accordingly, because KeyBank is entitled to summary judgment on ACI's fraud claim, the court also enters summary judgment on the conspiracy claim.

> ### C.  Damages for ACI's Claims for Breach of the EB Agreement and Addendum 54

The parties have stipulated to KeyBank's liability on Count IV (Breach of the EB Agreement) and Count V (Breach of Addendum 54). See Stipulation [#119]. KeyBank now seeks judgment that Section 8.3 of the EB Agreement limits its damages for these counts. That clause provides:

LIMITATION OF LIABILITY. EXCEPT AS PROVIDED IN SECTION 8.5
BELOW, THE TOTAL CUMULATIVE LIABILITY OF EACH PARTY AND
ITS RESPECTIVE AFFILIATES FOR ALL DIRECT DAMAGES ARISING
UNDER ALL CLAIMS IN CONNECTION WITH THIS MASTER
AGREEMENT OR ANY SCHEDULE, REGARDLESS OF THE FORM OF
THE ACTION (INCLUDING, BUT NOT LIMITED TO, ACTIONS FOR
BREACH OF CONTRACT, NEGLIGENCE, STRICT LIABILITY,
RESCISSION, MISREPRESENTATION AND BREACH OF WARRANTY)
SHALL NOT IN THE AGGREGATE EXCEED THE FEES ACTUALLY PAID
BY CUSTOMER TO ACI UNDER THE APPLICABLE SCHEDULE IN THE
TWELVE MONTHS IMMEDIATELY PRECEDING THE EVENT WHICH
CAUSED THE DAMAGE. THE EXCLUSIONS AND LIMITATIONS SET
FORTH IN THIS SECTION 8.3 SHALL APPLY EVEN IF AN EXCLUSIVE
REMEDY OF A PARTY[,] THIS MASTER AGREEMENT[,] OR THE
APPLICABLE SCHEDULE HAS FAILED OF ITS ESSENTIAL PURPOSE.

2009 EB Agreement § 8.3 [#122-1] (capitalization in the original).[6]

The Magistrate Judge recommended granting KeyBank's motion and limiting liability in

accordance with § 8.3. R&R 20-23 [#144]. Upon review, ACI's objections to the

recommendation are without merit.

ACI's objections begin with a fundamental misstatement of the contract. ACI contends

that "the plain language of the EB Agreement obligates KeyBank to pay for 60 months of

service, and it states that the full payment obligation could not be cancelled." ACI Obj. 38 [#151]

(citing 2009 EB Agreement [#122-1] and 2014 EB Amendment [#122-2]). But the cited

provisions make no statement at all about pay or payment obligations. Instead, Part 10, § 3.1 of

Schedule 1 to the 2009 EB Agreement provided only that the Schedule is effective as of the

Effective Date, and that "[t]he term of this Schedule shall commence on the Acceptance Date

and shall continue thereafter for a non-cancelable period of 60 months." And the 2014

Amendment stated the term set forth at § 3.1 "shall be extended for a non-cancelable period of

sixty (60) months[.]" 2014 EB Amendment § 1.1 [#122-2].

---

[6] Section 8.5 exempts breaches of the parties' obligations regarding confidentiality or
indemnification of third-party claims from the liability limitation clause. 2009 EB Agreement §
8.5 [#122-1]. Breaches of these obligations are not at issue in Counts IV and V.

ACI also argues that the Magistrate Judge treated the phrase "'noncancelable' as mere contractual surplusage." ACI Obj. 38 [#151]. But the Report does no such thing. Instead, the Report found that the "non-cancelable term goes to breach[.]" R&R 22 [#144]. In other words, the "non-cancelable term" is not mere surplusage and instead is the reason that KeyBank is liable for breach of contract for ending the contract early. The Limitation of Liability clause, on the other hand, determines the limit to KeyBank's "total cumulative liability" for that breach.

ACI's related objection that there is a "fundamentally irreconcilable conflict between the limitation-of-liability provision and the 'noncancelable' nature of the agreement," ACI Obj. 39 [#151], is similarly flawed. There is no irreconcilable conflict where the renewal term in the 2014 amendment set the term for the contract, while the limitation of liability clause put in place a limitation for any such damages if such a breach occurred.

Finally, even if there was any such conflict, the Limitation of Liability provision would control over the term set forth in the Schedule and its amendment, where the last sentence of the Limitation of Liability clause provides that the clause applies even if "the applicable schedule has failed of its essential purpose." 2009 EB Agreement § 8.3 [#122-1]. Further, § 8.4 provides that the payment schedules "reflect this allocation of risk and the limitation and exclusion of damages" and that "the Parties would not have entered into this Master Agreement or any Schedule" without this cap on damages. Id. § 8.4.

D. Breach of Contract – Confidentiality (Count VI)

The Report recommends granting judgment to KeyBank on ACI's claim that Defendants breached the confidentiality provisions of the EB and OLB agreements by disclosing confidential information to KeyBank and Northwest Bank during the merger process because ACI has not shown it can establish damages, and failed to respond to KeyBank's argument that damages are an essential element of a breach of contract claim under applicable law. R&R 23-24 [#144].

13

ACI offers no objection to the finding that it failed to come forward with provable damages. Instead, it now argues that it may pursue nominal damages. ACI Obj. 39 [#151]. This argument was not raised before the Magistrate Judge and is therefore waived.[7] The court adopts the Report's recommendation and grants judgment to KeyBank.

      E.    <u>Breach of Contract by Continued Use (Count VII)</u>

The Magistrate Judge also recommends judgment for KeyBank on the continued use claim (Count VII) because "ACI has failed to show a genuine issue of material fact with respect to KeyBank's continued use" of its software by failing to provide substantiating evidence. R&R 24 [#144]. ACI argues here it did provide evidence via the deposition testimony of its Chief Revenue Officer, Jeremy Wilmot, who, ACI contends, "confirmed that KeyBank continued to use ACI's software through February 23, 2017." ACI Obj. 40 [#151] (citing Defs' SOF ¶¶ 271-72 [#130]). The cited paragraphs of the statement of material facts states the logs "are proprietary and sensitive to ACI" but that "[u]pon request, ACI will submit exemplar records of the logs accompanied by a technical explanation if necessary for the Court." Defs' SOF ¶ 272 n.5 [#130]. However, as the Magistrate Judge properly concluded, "[t]he time for ACI to provide evidence has passed." R&R 24 [#144].

ACI's claim fails for a further reason. The hypothesis offered by Wilmot in support of ACI's claim, even if supported by logs ACI now offers to produce, would not support a claim of continued use by KeyBank. ACI does not dispute that by October 31, 2016, KeyBank's

---

[7] Review of cases cited by ACI for the proposition that "a party is always entitled to nominal damages" makes ACI's decision to burden the court with this new argument difficult to understand. ACI Obj. 40 [#151]. In <u>LaPoint v. AmerisourceBergen Corp.</u>, 2007 WL 2565709, at *10 (Del. Ch. Sept. 4, 2007), the court awarded nominal damages of 6 cents, showing how little ACI has to gain with its new argument. In <u>MBM Fin. Corp. v. Woodlands Operating Co., L.P.</u>, 292 S.W.3d 660, 665 (Tex. 2009), the Texas Supreme Court explained that "in recent decades the rule in Texas has been that nominal damages <u>are not available when the harm is entirely economic</u> and subject to proof (as opposed to non-economic harm to civil or property rights)" (emphasis added).

migration of First Niagara's online banking users from ACI's system to KeyBank's system was complete. Pl's SOF ¶ 116 [#136]. Thus, ACI's claim that KeyBank nonetheless continued to use ACI's system is based on a hypothesis that includes no alleged actions by KeyBank and no claim that KeyBank, rather than ACI, was responsible for the apparent software glitch that may have caused a password challenge for some KeyBank customers to occur on ACI's system. Defs' SOF ¶ 271 [#130] (citing Appx. PPPP – Wilmot Dep. 483-84 [#130-11]). Wilmot claimed in his deposition merely that the system log for either the OLB or EB System -- he was unsure which -- showed traffic by "KeyBank's <u>customers</u>" on the platform during January and February 2017 before the system was decommissioned and that he identified the unauthorized use to be "KeyBank customers who were being challenged for a two-factor authentication, <u>and for whatever reason</u>, that was coming through to the ACI system." Appx. PPPP – Wilmot Dep. 483-87 [#130-11] (emphasis added); <u>see also</u> <u>id.</u> at 491 ("[m]y understanding was that a First Niagara customer who is now in a KeyBank system was challenged, meaning they were asked for . . . a one-time password, . . . and the verification and validation of that one-time password happened in the ACI system when it should have happened in the KeyBank system").Wilmot further acknowledged, however, that despite the password challenge, the customers could not access their bank account information via the ACI system, as all banking information had been moved over to KeyBank. <u>Id.</u> at 492. And he noted finally that as soon as ACI alerted KeyBank to the issue, KeyBank told ACI to "go ahead and decommission the system." <u>Id.</u> at 493.

Accordingly, even if the logs established that KeyBank customers were asked to respond to a two-factor authentication through ACI's system, as ACI hypothesizes, the evidence would not be sufficient to support a claim that KeyBank breached the contract through continued use.

## II.    ACI's <u>Motion for Partial Summary Judgment</u> [#120]

ACI seeks judgment on three of KeyBank's affirmative defenses to Count I, which

alleges breach of the OLB Agreement. As the Magistrate Judge recommended granting judgment to ACI on KeyBank's unconscionability defense, and no objections have been raised, the court, after review, adopts this recommendation.

The court now turns to ACI's objections to the Magistrate Judge's recommended denial of judgment on the remaining two defenses.

The parties agree that Texas law applies to these defenses. R&R 26 n.131 [#144].

A. <u>Breach of Duty of Good Faith and Fair Dealing</u>

ACI seeks judgment on KeyBank's affirmative defense that ACI's claims for a breach of the OLB Agreement are barred by Plaintiff's prior breach of the duty of good faith and fair dealing. The Magistrate Judge explained that the Texas Uniform Commercial Code ("Texas UCC") provides that "[e]very contract or duty within this title imposes an obligation of good faith in its performance and enforcement." <u>Id.</u> at 26 (quoting Tex. Bus. & Com. Code § 1.304). The Magistrate Judge concluded that there were "issue[s] of material fact as to whether the OLB agreement involves goods" and was subject to the Texas UCC, and finally that there are questions as to whether ACI acted in good faith. <u>Id.</u> at 26-30.

ACI objects first that the OLB Agreement is not subject to the Texas UCC because it is for a "subscription," not a good. ACI Obj. 18-19 [#151]. Calling the agreement a "subscription" does not itself change the subject of the agreement. As a case quoted by ACI explains, a subscription "entails an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit . . . for instance, periodical magazines . . ." <u>Austin-Spearman v. AMC Network Entm't LLC</u>, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015). A periodical magazine does not stop being a physical good merely because the subscription involves recurrent delivery of that magazine. Similarly, labeling the transaction here a "subscription" does not answer the question of whether it involves goods

covered by the UCC.

ACI's argument that the OLB Agreement merely allowed KeyBank "limited access to ACI's software via an online portal," ACI Obj. 20 [#151], also does not decide the threshold question of whether ACI's software is a good. And though ACI points the court to scholarship that argues, in part, that the UCC is inapplicable as it has not been amended fast enough to keep up with developments in software and other forms of information technology, the inapplicability of the UCC to software is not so clean cut as ACI seeks to suggest. Courts across the country, as shown by the Magistrate Judge's citations, have come to different conclusions on the application of the UCC, depending on the technology in question and the nature of the parties' contract. R&R 27-28 [#144].

Therefore, the central question is whether a jury could find the OLB system fits within the Texas UCC's definition of good as items "movable at the time of identification" in the contract. Tex. Bus. & Com. Code § 2.105. Based on the evidence provided, the court concurs with the Magistrate Judge that the OLB system is arguably moveable.[8] ACI dedicated a server for First Niagara's system, making it possible that the whole system (and not just a copy, as ACI contends), could be moved or even given over to First Niagara or another entity. See Appx R-I – Saks Depo. 105-106 [#132-9]. While ACI may be correct that KeyBank "never had anything tangible – not a disc, drive, or download," ACI Obj. 20 [#151], the question is not whether the item in fact moved during the course of the contract, but rather whether it was "movable."

Next, as a secondary inquiry, if the contract possibly concerned goods, the court must also consider whether a jury could find those goods were the predominate focus of the contract, as opposed to services. See Simulados Software, Ltd. v. Photon Infotech Private, Ltd., 40 F.

---

[8] The court does not rely on evidence that ACI paid sales taxes on the OLB system for its analysis.

Supp. 3d 1191, 1200-01 (N.D. Cal. 2014) (collecting cases). Here, ACI has not shown that the OLB Agreement was predominated by services, as opposed to goods. Though ACI did house the system and offered as part of the contract some provision of professional services, it appears that First Niagara was primarily paying for access to the software, as shown by the payment structure where the bank paid an amount per online banking customer, as opposed to maintenance or software development. Compare, e.g., Exhibit A (Subscription Fee Schedule) to 2006 OLB Agreement 4 [#122-6] with Exhibit C (Annual Maintenance Fees) to 2006 OLB Agreement 7 [#122-6]. Accordingly, a jury could find the OLB system to be a good, as defined by the Texas UCC, and that the predominate purpose of the contract was therefore a transaction in goods.

ACI's next argument, that "in Texas, . . . in order for the UCC to govern a transaction, a sale must take place," ACI Obj. 22 [#151], is incorrect. ACI may be correct that for Chapter 2 of the Texas UCC to apply, there must be a "passage of title from the seller to the buyer," id., but the duty of good faith attaches to contracts covered by any chapter of the UCC. Tex. Bus. & Com. Code § 1.304. If only the right to possession and use, and not the passage of title, is the subject of the contract, the OLB Agreement may still fall under Chapter 2A. Chapter 2A concerns contracts for "transfer of the right to possession and use of goods for a term in return for consideration . . ." Tex. Bus. & Com. Code § 2A.103.[9] As KeyBank had a right to "use, publicly perform and display the System" for the duration of the contract, 2006 OLB Amendment § 3 [#122-6], the court cannot find, viewing the facts in the light most favorable to KeyBank, that Defendants did not have a sufficient possessory interest in the OLB system for the duration of the contract to bring the contract under the purview of Chapter 2A of the Texas UCC and, therefore, for the duty of good faith to attach.

---

[9] The Chapter 2 definition of good also applies to Chapter 2A. Tex. Bus. & Com. Code § 2A.103(a)(8).

Finally, ACI argues that "parties negotiating new contracts" are not bound by the UCC, and the attendant duty of good faith, and, further, that no duty existed because KeyBank "does not allege that ACI failed to perform a specific provision of the contract." ACI Obj. 23-24 [#151]. However, ACI acknowledges that a "modification" of a contract still requires good faith, and if KeyBank's reading of the "Term" of the 2009 OLB Agreement is correct, see KeyBank Reply 35-36 [#154], the negotiations were for a modification, not a renewal of the Agreement. More saliently, KeyBank asserts a violation of the duty of good faith that existed in the 2009 OLB Agreement, which was operative during the parties' negotiations in 2015 and 2016. Am. Answer ¶¶ 104-17 [#102]. The 2009 OLB Agreement contained renewal language mandating automatic one-year renewals, unless a party provided timely notice of its intent not to renew. A party exercising that contractual right not to renew would need to do so in good faith. And so, viewing the summary judgment record in the light most favorable to KeyBank, a jury could find that ACI's conduct, alleged to include impermissible threats that are discussed further *infra* to obtain a five-year renewal, violated its duty of good faith.

Accordingly, for the reasons stated here and for those stated in the Report, judgment is denied as to KeyBank's affirmative defense of a breach of the duty of good faith and fair dealing.

B.  Duress

ACI also seeks summary judgment on KeyBank's duress defense. The Report recommends denying judgment, as a jury could find each element of duress under Texas law and find, contrary to ACI's argument, that KeyBank did not ratify the 2016 OLB Agreement. R&R 31-37 [#144].[10] ACI does not dispute for purposes of summary judgment that it made the alleged

---

[10] The Magistrate Judge also rejected ACI's contention that KeyBank lacks standing to assert the duress defense on the basis that "[i]t is undisputed that KeyBank assumed all of First Niagara's rights and responsibilities under the OLB agreement," and that ACI's cited cases do not support its argument. R&R 32 [#144]. ACI does not object to this finding, apart from seeking to incorporate its original filing into its objection, which, as explained earlier, is insufficient to

threats, see ACI Obj. 7 n.5 [#151], but asserts (1) it had a legal right to shut off First Niagara's OLB platform once the contract lapsed; (2) the Report misinterprets "illegal exaction"; (3) First Niagara had present means of protection in the form of an injunction, and otherwise, First Niagara created the exigent circumstances; and (4) KeyBank subsequently ratified the agreement. ACI Obj. 6-17 [#151].[11] As set forth below, the court finds these objections to be without merit.

1. Prong 1 – Threat to Do Something the Threatening Party Has No Legal Right to Do

ACI argued below that it had no legal obligation to extend the OLB Agreement beyond its expiration, while Defendants contended the threat to shut off the OLB platform amounted to tortious interference with First Niagara's pending merger with KeyBank and was also prohibited by language in the contract. The Magistrate Judge found a triable question, based on KeyBank's evidence, as to "whether ACI's conduct constituted unlawful tortious interference in First Niagara's impending merger agreement," and did not reach KeyBank's alternative argument based on the contractual language. R&R 34 [#144]. ACI objects to the Report's conclusion, asserting there was no evidence of independently tortious or unlawful conduct necessary for a tortious interference claim under Texas law. ACI Obj. 8 [#151] (citing Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 713 (Tex. 2001)).

In response, KeyBank points out the alleged tortious interference occurred after First Niagara had entered into the merger agreement with KeyBank, and that ACI's explication of

---

place the objection before this court.

[11] The three prongs of duress under Texas law are: "(1) a threat to do something that the threatening party has no legal right to do; (2) some illegal exaction or some fraud or deception; and (3) the restraint is imminent and such as to destroy free agency without present means of protection." Leibovitz v. Sequoia Real Estate Holdings, L.P., 465 S.W.3d 331, 349 (Tex. App. 2015) (internal citation omitted).

Texas law ignores the distinction between interfering with existing and prospective contracts. KeyBank Reply 34-35 n.17 [#154]. The court agrees. As set forth in Wal-Mart, on which ACI relies, Texas courts impose far stricter requirements for tortious interference with prospective business relations than for tortious interference with contracts. See 52 S.W.3d at 721-22 (stating persuasive Seventh Circuit cases "demonstrate the importance of decoupling interference with contract from interference with prospective relations, and of grounding liability for the latter in conduct that is independently tortious by nature or otherwise unlawful"). Instead, as the Report states, tortious interference with a contract merely requires "wrongful" or "improper" conduct. R&R 33 [#144] (quoting Wal-Mart, 52 S.W.3d at 713). Here, KeyBank asserts ACI threatened to interfere with the merger agreement, an interference that, if carried out, could have been wrongful or improper, and thus tortious, even if the conduct was not independently tortious.

ACI argues further that it lacked intent to interfere with the merger agreement. ACI Obj. 9-10 [#151]. "Intent" in the context of tortious interference with a contract requires a showing that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it," and does not require an "intent to injure." Amigo Broad., LP v. Spanish Broad. Sys., Inc., 521 F.3d 472, 490 (5th Cir. 2008) (quoting in part Sw. Bell. Tel. Co. v. John Carlo Tex., Inc., 843 S.W.2d 470, 472 (Tex. 1992)).

The Report, in finding a possible threat of tortious interference with the merger agreement, relies on testimony by Scott Behrens, ACI's Chief Financial Officer and designated damages expert. R&R 33-34 (citing Pl's SOF ¶¶ 218-22 [#136]). Behrens acknowledged in his deposition that a failure to reach an agreement could have caused a risk to the merger agreement and that renewal of the OLB Agreement with First Niagara, to ACI's benefit, would have been likely if the merger did not happen. Appx. R-EEE – Behrens Dep. 142-144 [#132-57]; see also R&R 33-34, n.162 [#144] (stating Behrens' testimony shows ACI "understood that torpedoing

the merger would provide them with ten years of profits from First Niagara" and that a lack of

agreement "would be reasonably likely to jeopardize the merger"). In addition, while ACI sought

the five-year renewal term before the merger agreement was known, KeyBank points out that

ACI's shutdown threats started in January 2016, after the merger was public. KeyBank Reply 35

n.17 [#154]. In sum, the court has no disagreement with the Magistrate Judge's finding that there

is a triable issue as to ACI's intent.

In any event, KeyBank has a further argument that allows its defense to proceed to a jury.

KeyBank contends ACI's threat to shut down the OLB platform was unlawful because it would

have violated Section 1 of the 2009 OLB Agreement. KeyBank Reply 35-36 [#154].

> The 2009 OLB Agreement stated:
>
> The initial term of the Agreement shall begin on March 21, 2006 (date of
> execution of the 2006 Amendment) and continue for a period of five (5) years
> ("Initial Term"). Following the Initial Term, the Agreement shall automatically
> renew for an additional five (5) year term ("Renewal Term"). Thereafter, the
> Agreement shall automatically renew for one (1) year terms unless either party
> provides written notice to the other party of its intent not to renew no less than
> ninety (90) days prior to the expiration of such one (1) year extensions.

2009 OLB Agreement § 1 [#122-7].

KeyBank argues that this language is unambiguous and that "a one-year renewal period

cannot expire if it never began" and, thus, "by requiring notice before the expiration of a one-

year extension, the provision makes clear that neither party could unilaterally terminate the

contract until the end of a one-year extension – not at the end of the five-year term, as ACI tried

to do here." KeyBank Reply 35-36 [#154] (emphasis in the original). KeyBank thus contends

that the OLB Agreement could not have expired until March 21, 2017 (following the automatic

five year period and an automatic one year extension), and therefore the threat to shut down the

OLB platform in March 2016 was a threat to breach the contract. Id. ACI responds that the

provision mandates two five year terms, and provides for "an automatic one-year renewal"

unless either party provided the written notice of an intent not to renew no less than 90 days prior "to the expiration of such one (1) year extensions." ACI's Reply in Support of Mot. for Partial Summ. J. 19 [#135] (quoting in part 2009 OLB Agreement § 1 [#122-7] (emphasis added).

However, contrary to ACI's statement, the agreement describes the second five-year term as a "renewal term," and refers to multiple one-year renewals, not just one. Nonetheless, ACI's construction is plausible, and the interpretation of the contract is thus a fact issue for the jury. Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983) (citing Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1980)).

Nor is the evidence offered by ACI to defeat KeyBank's construction sufficient as a matter of law to take construction of the agreement away from the jury. ACI contends that it has offered its "contemporaneous interpretations of the agreement," ACI Reply in Support of Mot. for Partial Summ. J. 19 [#135]; see also ACI Obj. 9 n.6 [#151] (stating what it purports the parties understood "at the time of ACI's notice of termination [in December 2015]"), but the proffered "contemporaneous" evidence is contemporaneous only to when the alleged threats were made, and not to when the operative OLB agreement was entered into by S1 and First Niagara in 2009. And KeyBank has offered evidence that First Niagara did assert at the time of the threatened shutdown that it had "a solid legal position to hold [ACI] to a 1 year agreement," Appx. R-YY – Dec. 11 Emails [#132-51],[12] and told ACI that the "organization (legal and executive) believe that they are entitled to the 1 year extension outlined in the S1 agreement." Appx. R-ZZ – Dec. 17 Emails 3 [#132-52]. While ACI vehemently disagrees that KeyBank's belief was based on its interpretation of the contractual language, this appears to be a dispute that is best left to the jury.

---

[12] The internal ACI email also includes a draft letter from an ACI email address explaining that First Niagara "wants to exercise their right to a one year renewal per the S1 contract." Appx. R-YY – Dec. 11 Emails [#132-51].

2.   Prong 2 - Illegal Extraction

ACI also objects to the Magistrate Judge's finding that the second prong for a duress

defense – illegal exaction – can be met by KeyBank and accuses the report of conflating the

prong with the third prong. ACI Obj. 11-12 [#151]. Instead, ACI insists, the illegal exaction

prong should be analyzed "in connection with the first prong." Id. at 11.

However, ACI is drawing a distinction where there is none. The Report merely found that

that the "exaction" is "simply the acquisition of some benefit." R&R 34 [#151]. Thus, the prong

is akin to a damages finding, requiring a showing that the party benefitted from its wrongful

threat (prong 1) based on the other party's acts that resulted from the loss of its free agency

(prong 3). Even ACI's quote from Black's Law Dictionary, that "exaction" is "the act of

demanding more money than is due; extortion," supports the Report's finding that ACI's threat,

was in effect a demand for more money (in the form of a longer renewal term) than would have

been due without the allegedly wrongful conduct. ACI Obj. 11 [#151]. Accordingly, the

Magistrate Judge is correct in the analysis of the second duress prong.

3.   Prong 3 - No Present Means of Protection

ACI also objects to the Magistrate Judge's finding that First Niagara lacked a present

means of protection before renewing the OLB Agreement. The Report determined a jury could

find that ACI led First Niagara to believe a renewal would be worked out up until it was too late

to file suit. R&R 35 [#144]. While KeyBank may not ultimately prove that it did not know until

"the time to file a lawsuit had run out" that ACI was serious about a shutdown unless KeyBank

signed a five-year agreement, KeyBank's Opp'n to Mot. for Partial Summ. J. 35 [#131], the

Report is correct to conclude there are sufficient questions as to ACI's conduct in possibly

stringing KeyBank along to allow this question to go to the jury.

ACI's secondary argument, that KeyBank created the exigency, also fails on summary

judgment. While ACI may be correct that First Niagara looked for alternatives to renewal of the OLB Agreement for years, "rejected reasonable alternatives," and contributed to the last-minute scramble to try to negotiate a renewal with ACI, ACI Obj. 15 [#151], this does not mean, for the "matter-of-law outcome," id., that a jury could not find that First Niagara acted under duress based on ACI's conduct. The evidence instead allows for a finding that ACI strung First Niagara along, creating enough hope so that KeyBank did not have a meaningful opportunity to choose a reasonable alternative until it was too late. As this is a question for the jury, the court adopts the Report on the third prong of the duress defense.

4.   Ratification

ACI finally objects to the Report's finding that KeyBank did not ratify the agreement because it was possibly still operating under the conditions of duress caused by ACI's threat to shut down the OLB platform up until it successfully migrated the First Niagara banking customers onto its own network. R&R 36 [#144]. ACI contends there is no evidence that ACI's threat of a shutdown continued after the 2016 renewal and argues that KeyBank "cynically chose to honor the agreement" and then breached it when it was ready to do so. ACI Obj. 16-17 [#151].

The Report fairly infers that KeyBank believed that it had to migrate all customers off ACI's system prior to renouncing the contract, lest ACI unilaterally shut down the system. Contrary to ACI's assertion, the threat was not, as a matter of law, "resolved," see ACI Obj. 16 [#151], when the renewal was signed and a jury is best suited to determine the question of fact as to whether duress remained post-renewal.

ACI's citation to United States v. McBride, 571 F. Supp. 596 (S.D. Tex. 1983) is of no moment. There, the court found the United States, who had acted under the duress of a bomb threat when agreeing to drop charges against one defendant in return for help from a second defendant in locating the bombs, later ratified its agreement by dropping the charges. 571 F.

Supp. at 612-613. In that case, the duress had a clear end date, once there was no longer a threat posed by the bombs. Id. In this case, a jury could find that the threat to First Niagara, and then KeyBank's customers did not dissipate once the agreement was signed but only once the customers were no longer on ACI's system.

Thus, as questions of fact remain as to KeyBank's duress defense, the court adopts the Magistrate Judge's recommendation to deny judgment.

## III.    Conclusion

Accordingly, the court ACCEPTS AND ADOPTS the Magistrate Judge's Report and Recommendation [#144] in whole for the reasons stated therein, and for the additional reasons stated above. KeyBank's Motion for Partial Summary Judgment [#123] is GRANTED and ACI's Motion for Partial Summary Judgment [#120] is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Date: September 30, 2020                               /s/ Indira Talwani_____
                                                      United States District Judge